The Honorable Judges of the United States Court of Appeals for the 3rd Circuit are admonished to come here and give their attention. This court is now in session. God save the United States and this honorable court. Please be seated. Good morning. We're delighted to have with us to Jane Rastani on the quorum who comes and helps us frequently. And we're so happy that she's available and willing to do that. I sat with her all last week and there were hard cases as this may be. So on behalf of Judge Fuentes and myself and the whole court, thank you again, Jane. You're welcome. OK. Good morning, Your Honor. Judge Slogar, Judge Fuentes, Judge Rastani. Please be seated. My name is Edward Colbert and I represent the appellant Cooperneff Advisors, which is a hedge fund operator in Philadelphia. Do you want to reserve time? Oh, excuse me. My apologies. I'll reserve five minutes, Your Honor, for rebuttal. OK. That's granted. Let me start by asking you a question, which is the complaint, the state complaint in this case was filed three and a half years ago. Tell us what the current status is. In other words, is Cooperneff using this program? Is Mr. Zimmer working somewhere? We've gotten an up-to-date on the law, but we haven't gotten an up-to-date on where the parties are, whether they're still arguing. On behalf of Phil, Your Honor, the case in state court was filed in order to secure a return. We understand what it means. That case was filed and the order was issued, the TRO, and that expired after 10 days. The only additional proceeding that's occurred in state court since that time is Mr. Zimmer's lawyers sought fees and costs associated with the issuance of that injunction. I'm sorry. I didn't make my – I obviously didn't make it clear. What I want to know is, is there any injunction outstanding that stops anybody from using the program? Is Cooperneff using the program at issue, and is Mr. Zimmer working for somebody? Those were my two questions. Hold on. That's fine, Your Honor. I'll have to back up just briefly. One, there's no injunction against either party using anything, either in state court or federal court. So Cooperneff is using this program now? No, that's why I need to back up, Your Honor. We keep saying using this program. Something that needs to be very, very clear is that the action in state court involved certain software, data, and programs that were on Cooperneff's computers that were removed by the defendants. Which Cooperneff took from – No. The facts show that Cooperneff at least took the program from Mr. Zimmer's computer when it knew it was about Philippe. Actually, Your Honor, that's not the case. The facts do not show that. The record below does not support that. What happened was Dr. Zimmer was hired to work on programming for Cooperneff for a period of a year and a half. Dr. Zimmer, please answer my question first. Is Dr. Zimmer working somewhere? I don't know if he's working. I was told he's working somewhere. There's no injunction against his working. I'm told he's working. Perhaps his counsel will know. I simply don't know. And is Cooperneff using – whoever had the right to it, which is the issue – is Cooperneff currently using that program which contains at least a portion of the program that Dr. Zimmer took with him when he came to Cooperneff? The answer to that, Your Honor, is I don't know and I highly doubt that whatever program is left that might be used has any bearing or relationship or appearance of similarity to whatever existed back in 2004. So what are you arguing about now? That's my point. Why is it all moving? I don't know, Your Honor. We're here because we have a suit filed against us in federal court which we think is improper. It includes things like defamation, improper termination, misappropriation of trade secrets, all of which are baseless and should be resolved by arbitration. Was the purpose of the state court action to prevent Dr. Zimmer from taking the software program with him? It was two things. It was, one, to return a copy of the program to Cooperneff because he had deleted the entire thing from Cooperneff computers, and the second thing was to prevent him from giving it to a direct competitor of Cooperneff. That was the issue and that was the injunction. So all you sought was injunctive relief in the state court? There probably was a claim for damages associated for the deletion because there was a period of time when we did not have the computer available to us, but that was as a result of the deletion of the program from the Cooperneff computers. That case has been staged since then. If I'm not mistaken, you also sought damages for defamation in the state court? I believe that Dr. Zimmer sought defamation against Cooperneff. Cooperneff, can we have the complaint? Cooperneff sought a great deal more than just the trade secret issue. Well, I think that's really my question as well. Did you not seek a lot more than simple injunctive relief in the state court when you filed your action for that? As I said, Your Honor, there was a claim for damages associated with the deletion of the program. Let's go over the complaint, if Your Honor wishes. The claims in that complaint are different from the claims set forth by Dr. Zimmer in his complaint in federal court. I don't think there's any doubt that they're different. He sued in one case and you sued in the other. The question is, are your defenses in the things that you would assert in defense of the case in federal court the same as the things you asserted as a plaintiff in the state court? That's where the issue comes up. As I understand, the only thing that can be remotely related to the state court action is Dr. Zimmer's claim that he owns a copyright in the 2002 code which he created, allegedly, and there's no dispute here, prior to coming to work for Cooperneff. That's what he's claiming. In fact, the Cooperneff program that existed in 2004, after a great deal of time and effort, is not an issue there. There's no copyright claim on it. There's no registration on it. I think the record is undisputed. There's very little similarity left anymore, which is my point to Your Honor that, as of today, I'm assuming whatever they're using there probably doesn't look anything like what existed two years ago. That doesn't really go to my question. My question is whether your claim in the federal court that you own this program is the same as your claim in the state court that you own this program. It's not, and we don't have a claim in the federal court that we own the program. We have a claim in the state court that we own the 2004 program. We have no claim in the federal court, I believe, that we own the 2002 program. You were in the federal court responding to Mr. Zimmer's claim. You filed no affirmative claim on your own behalf. We did file affirmative claims, but I don't believe that they represent the same claims that are in state court. They, for example, would be, I'd have to have it in front of me. It's been three plus years, but the claims in federal court I know are not the same as those that are in state court. What was the difference? What affirmative claim did you file in the federal court that was not filed in the state court? Well, the claims in the state and federal court had to do with, for example, the defamation counts. I'd have to have it in front of me, Your Honor. I'm sorry, I don't have the entire record before me here. Are you saying that the claim in state court did not contain a defamation count? Well, let's take a look at it. We do have that one on the record right here. Well, then it's not different. Pardon? Then it's the same, according to you. No, it wouldn't be the same, Your Honor, because Dr. Zimmer's claim for defamation is that the statements made by Cooper Neff at the time of his discharge constituted defamation against Dr. Zimmer. And isn't your defense that it's not defamation because it's true and that you had the program which he tried to take? That you owned the program which he tried to take? That's correct, Your Honor. Okay, and isn't that what you said in the state court, that you owned the program that he tried to take, the 2004 program? Yes, Your Honor, to the extent that that's the issue, but we don't claim that he stole the 2002 program from us. That's the only way we're in federal court. Excuse me. I'm sorry. Excuse me. The only way you are defending yourself against this, he's claiming it's the 2002 program. You're saying, no, it's the 2004 program. You're saying it's the 2004 program in the federal court, and you're saying it's the 2004 program in the state court. No, no, we're not, Your Honor. There is no claim by Cooper Neff to ownership of the 2002 program. Excuse me, didn't I just say 2004? Yes, but as a defense, we're claiming that what we said were truthful statements. Exactly. Yes. You are saying in the state court, it's our 2004 program, don't mess with it. Right. You're saying in the federal court, it was our 2004 program, so we didn't defame him. It's true. What we said was true. It's our 2004 program. Correct. Doesn't that sound the same to me? That doesn't answer the question before the court. We're not seeking affirmative relief with respect to the 2004 program in federal court, only in state court. It all depends on the fact that you're saying this is all about ownership of the 2004 program. That's what we're saying. That's not what Dr. Zimmer said. Okay. Can I go on? I want to just ask another question. The 30-day limitation. Yes, Your Honor. I want to know if what is going to happen here is if we say this has to go to arbitration, then in the arbitration, you will say he failed to make the 30-day limit of making his claim to HR, and therefore, he's out the window. Is that what you're going to say? I'll give you a short answer. Absolutely not. Because he actually filed an HR claim within 30 days? Because the issue was joined and made known to us well before 30 days. It's not an issue. We have races in defense. We certainly couldn't assert it in arbitration or in this court. Okay. I just wanted to find that out. My question has to do with whether or not you sort of made your decision by going to state court. In other words, you have remedies that you could pursue. You have arbitration. You have a state court proceeding. You have a federal court proceeding. But didn't you elect your remedies when you chose to go into state court and not merely seek an injunctive relief but also seek damages? Your Honor, we elected with respect to the carve-outs in the contract. What do you mean the carve-outs? Excuse me. What do you mean the carve-outs in the contract? Section 6 of the contract carves out almost everything. I can't imagine that there's anything at issue that's not within Section 6. Well, I can give Your Honor a few listings. Go ahead. It's simply any tort-related dispute. Well. For example, defamation, lance, libel, slander, all those things, the fact which Dr. Zimmer brought. Those are not encompassed within a carve-out. Title VII claims, ADA claims, Pennsylvania Human Relations Act claims, EEOC claims. None of those are encompassed. They'll all have to be arbitrated. Other things. Anything other than Section 6, Dr. Zimmer points out. Section 6 is very broad. But it relates primarily to the intellectual property rights principally. No, it goes much beyond intellectual rights. It does. It certainly does. It does go beyond that, Your Honor. Okay. Why don't you read Section 6 to us? You're on our time, and we have the time to hear you. Absolutely, Your Honor. Let me turn to Patrick. All right. Section 6 is exclusivity of services, non-solicitation of confidentiality, etc. Exclusivity of services. So that's an employment-related thing, right? Go ahead. That would be exclusivity of services. That would be employment-related. However, issues over payment, non-payment of non-discounts. Excuse me. That goes beyond the trade secret, the emergency. It's your claim that you had an emergency and that you had to go into state court right away to protect your claim. And my question is, wasn't your complaint over and above beyond just the emergency? I think the word you used was business justification. Wasn't it over and above? So let's see what Section 6 allows you to arbitrate that doesn't allow Zimmer to arbitrate. Because Zimmer doesn't have that kind of – you didn't give Zimmer that kind of right. Zimmer does not have the right to seek judicial relief under Section 6. Well, if the issue is – well, you haven't really answered it. I haven't given you a chance to answer the other thing. But I can't understand why it's fair for you to exclude from arbitration – from court and judicial proceedings that kind of claim but not Zimmer, who might also claim that the employer took something that belonged to him, and yet he would have to arbitrate that, but you can go into court for that. What is the equality, the fairness of that? Well, Your Honor, first let me back up. The issue of equality or fairness really is an issue, as the Sally case pointed out in many cases here, is that it can be inequality. There can be differences in access. But let me talk about that specifically. But this is total. Total. I don't agree. It's total. But let me give a suggestion with respect to intellectual property rights. As an example, we have a circumstance where the status quo, anti-legum, to use the expression, was that Cooper and F was using a program to trade that had paid Dr. Zimmer substantial sums of money and invested money to develop. Dr. Zimmer deleted it from the system, took it, and was going to give it to a competitor. Two things. One is, changed the status quo because it ceased making it available to Cooper and F. And, in terms of findings of fact, Judge Kelley below found that, in fact, his having done that made it unavailable to it, that if it was unavailable to Cooper and F, it would irreparably injure Cooper and F not to be able to have that program. He did it in the context of a preliminary injunction proceeding. But he said that would be an irreparable injury. Therefore, they went to court. Secondly, with respect to the access, with respect to Dr. Zimmer, if the status quo, anti-legum, is that Cooper and F is using the program and Dr. Zimmer claims it, then he has a damages claim. Cooper and F's not going anywhere. Cooper and F would continue to perform the way it had been performing. And there's no reason why a control through the rabbit arbitration could resolve his question. I'm sorry. Sorry. I don't think you answered the question that I asked, or else I just didn't hear it. I said you argue that you need immediate access to the courts to vindicate your trade secrets. Presumably all employers would be in that position. And I still don't know why wouldn't employees who argue that the employer has stolen their trade secrets be in a similar position? Because, Your Honor, in circumstances like this, if the employer has had access to the trade secret and the employee claims that it's his trade secret, in this case, for example, Dr. Zimmer says, I developed it. It's mine. Yes, you paid me for it. Yes, we used your computers. Yes, we used your assets. I developed it. It belongs to me. The fact is there's no change in the status quo between the parties to allow Cooper and F to continue using it. Would he be able to go into court to stop you from using what he claims you stole from him? Your Honor, to the extent... And instead you say he has to arbitrate that claim. Your Honor... So that's a simple question. To the extent that he's arguing about supposed trade secrets developed while at Cooper and F and he claims they're his. In point of fact, that's a contractual provision he's agreed to. It's valid and it's not unusual at all to have that kind of a division. If he were claiming, for example, that Cooper and F somehow stole access to a code that he did not have at Cooper and F computers, that was not part of his job, that might be a different question. I'm not talking about the facts in this case. I'm talking about a hypothetical, the kind of thing this Court always gets. And this goes to, of course, the unconscionability issue. Leave aside the waiver issue. You haven't... Leave aside what he claims and you claim.  Now, with a contract like this, the employer is free to go into court, you say, is free to go into court to seek an injunction to protect trade secrets that the employer says the employee is using or will use. And I'm just asking you why an employee... And I still haven't gotten an answer. Why an employee who claims the employer is using something that belongs to the employee... Why can't that employee go into court? Why... Why... It's... Why isn't... Why... What reason is there? Your Honor, if the hypothetical you pose is that the employer somehow stole something from the employee that is unconnected to the employee's job, then I would argue that the contract, for example, limiting the rights of the supplier is not associated with his job. However, if it was associated with his job, it's subject to contractual limitation. And the fact is that the employer had access to it all along and there's no change in the status quo. It's the theft of the trade secret, removal, and use for another party that ends its ability to be a trade secret. It's the cases we've cited to you. You cannot put... I think Judge... I'm sorry. Judge Weinstein's had a question. Yeah, actually, Zimmer did, in fact, go to court. He wouldn't go to court while he's employed by you. He left the employment and then went to court and filed a TRO. So he exercised judicial remedies. With regard to your ability to go to court, though, I suppose that in the field of intellectual property, as in the area of mortgage law, you have to have an ability to go to court. What is your business justification for your having this dual remedy under the employment contract? Well, without addressing the issues to whether or not it's an obligation to show business justification, there are... Right, because, Your Honor, and that's what my only point was saying, why it's one of the most common carve-outs is intellectual property is that is secret. It is a dependent. Most corporations, and particularly circumstances like this with a hedge fund that uses unique, noncommercial, custom-designed software, for example, to run its entire business, the entire business is based on that, cannot function without secrecy and confidentiality. Okay. Judge Lohgann's question is, why does Zimmer not have the same right that you have to go to court immediately? Well, the extent... Listen. No, I understood that. That's right. I'm trying to understand the context of the answer. I think it has to be in context. If Zimmer has... Because we're talking about a program that's in use. The fighting over a program that has use and commercial value is being used by his employer. To the extent that his employer continues to use it, there is no difference, and he can resolve those claims that he owns it, rather than the employer, through arbitration. But if he wants to stop... And it's entailed with fore-rounding damages, including injunction and damages. I'm not going to pick up on that. Let me get back to it. I'm sorry. He cut off his answer, and I wanted to get the rest of it. I'm sorry. You were saying what his rights were that he could do under the contract to protect his interests. And you said, in arbitration, he could get injunctions and damages? He could get the full range of counsel, the full range of rights, including if the arbitrator says that Cooper and F would no longer be entitled to use that program. That could be entered into court, not the jurisdiction. But that's going to take a long time. I mean, the idea of a TRO is you can go walk into a courtroom, of course, Mr. Colbert, and get immediate relief. But if you have to go through arbitration, that's not immediate relief. By then, you could have the program and you could copy it and make a copy for yourself. So he doesn't have the same right that you do. He doesn't have the same right, Your Honor. And that is encompassed within the contract. It's intended by the contract. It's recognized by the Pennsylvania courts and this court as an appropriate division. And in terms of whether or not it's equal or not, or equal access, there's nothing in the law that says it has to be equal. I guess your response might be, he's a big boy. He's a smart guy. He knew what he was getting into. He knew that. He signed the agreement. Exactly. I didn't want to get into the procedural unconscionability issue because this court need not read procedural unconscionability. But if you look at the record, in point of fact, there's no support for procedural unconscionability. What do you mean we need not reach it? I mean, I understand your argument that there is no procedural. But I don't understand your argument that we need not reach it. If this court finds that there is no substantive unconscionability, because the law does not require that there be equality of access to the courts, then the case, the inquiry ends because Dr. Zimmer must prove both procedural unconscionability and substantive unconscionability. So that's why I say you don't need to reach it. But in point of fact, if you look at the record, Dr. Zimmer, to use Judge Fuentes' statement, is a big boy. He's a Ph.D., Harvard-educated economist. He is the principal of the Vanguard Group. He's the vice president of J.P. Morgan. He was chief of four market divisions for Federal Reserve. You give very long answers. I'm sorry. I want to go back to the waiver issue because I'm looking at the state complaint now that you filed. I have it in front of me. Oath for Montgomery County. And that complaint goes far beyond the immediacy of the need to stop him from taking it. Count one is injunctive relief. Count two is breach of contract. Count three is misappropriation of trade secrets. Count four is breach of fiduciary duties. Count five is conversion. Six is unfair competition. All of which go far beyond the immediacy of the need to stop him from taking this program to another employer. And therefore, why haven't you, by putting all of these into litigation in state court, why should we hold that you can then demand arbitration? Your Honor, there were lots of counts. But the counts all relate to essentially the theft of the program from the computer and the intent to use it for a competitor. There may be multiple counts, but it all revolved around that. That's why he breached his fiduciary duty. He breached his contract by stealing it. Well, those all come from that. But that's not – and that may be the issue that you will ultimately have to decide if this thing is not moved. And I have a lot of questions as to whether it's still alive, other than the request for damages. But they go beyond the need to seek an immediate injunction. They do go beyond the need to seek an immediate injunction. You can see that. Oh, no, I can see it. It goes beyond the claims, beyond the need to seek an immediate injunctive relief. But they all relate to – that's what triggered it. They all relate to exactly the same set of facts. All he had to say was, that's our property. He stole it. We want injunctive relief. That's all he had to say, I think, as a basis to get injunctive relief. But as Judge Slover has outlined, you went much further than that, as if to try to resolve all issues between yourself and Dr. Zimmer in that form, in the state court. Well, let me back up. And the answer to that, Your Honor, is it's not all issues. And it's clearly not all issues because Judge Zimmer – I mean, Dr. Zimmer raised issues that are not in the state court action. And if I can – for example – Well, you're way beyond your time. I understand. Go ahead. So you're really on our time to answer our questions. I do have one question. I want to let you finish your answer, but I do have one follow-up question that I think is important for me in this case. Go ahead. Oh, no, I was going to say – the answer is yes. It went beyond that, but it didn't resolve all issues that exist now between the parties because Dr. Zimmer's issues in federal court are different. And the fact that there are more claims, for example, doesn't mean that I'm part of a carve-out. And I would point, Your Honor, to the Stanley Layman group case, which was decided last Friday. Well, you talked about that. And I think we've cited that in our supplemental memo brief of yesterday. That case might help me with my question, which is how far did you go? I mean, I don't have a problem with the split form principle that Sally has adopted, but you get to a certain point in litigation where the court has to say, you've just gone too far. You can't have it both ways. And you filed a complaint, and Judge Slover has laid out all the causes of action. And my impression is that you sought to get all of the issues between yourself and Dr. Zimmer resolved in that form. Did you, beyond filing a complaint, do any discovery? Well, that's something that's not clear from the appellee's brief, but I'll tell you there were. In state court, there were, I believe, three depositions, two taken by Dr. Zimmer and one taken by— In the state court proceeding. In the state court proceeding. There were no discoveries taken in the federal court proceeding, no depositions. There was only exchange documents. There was very limited discovery for purposes of a PI hearing. The PI hearing never took place in state court because it was dropped as a result of the agreement not to do things that we'd asked the people to do. What's a PI hearing? Oh, a preliminary injunction hearing. I'm sorry. There was a TRO. There was a preliminary injunction hearing scheduled. The preliminary injunction hearing in state court was never pursued because, essentially, of the agreement not to disclose this to our competitors. And, therefore, it was unnecessary. There has been no discovery taken in the federal case other than an order by Judge Kelly. The parties exchanged the two codes they were arguing about because only to look at them to see if they, in fact, were the same. Whose deposition? Who requested deposition? Dr. Zimmer took two depositions. Whose? I believe one of Christian Monestier, who was the operating officer, and it was another one of another employee at Cooper and F. And his deposition was taken by Cooper and F. And whose deposition did you take? I didn't take anybody, but the former counsel took a deposition of Dr. Zimmer. Cooper and F. Yes, of Dr. Zimmer. The trouble I have is, I mean, you can go so far in a case at which point you've really just gone too far, and so that maybe waiver is applicable in the case. I'm not sure what that point is, by the way, which is why I'm asking you the question. First of all, you filed a complaint asserting the claims Judge Sloboda has outlined, and the answer was filed in the complaint. Now, was there anything preventing you from going in the state court and saying, you know, we have a contract here which provides for arbitration. Let's arbitrate. We'll withdraw our complaint from the state court. Was there anything that prevented you from doing that? Well, there was nothing that prevented us from doing it there other than the interposition in the middle of that whole event of the federal case in which it was asserted. When would you say it's too late, we're stuck? That's obviously a question that requires a lot more information. I think that's why Judge Kelly below didn't find any waiver based on delay or prejudice. He found this nontraditional waiver simply by what he said is an election to go to state court. We have to write an opinion, and supposing we get past the unconscionability point and now we're stuck on the waiver point and we're looking at your conduct in the state court. Is that going too far or is it not? What if you had interrogatories? What if you had a pretrial conference? At some point, you've just gone too far. I would agree, and I think one point to go too far is if, in fact, there is a case management case entered, the parties go through a series of depositions, full discovery. You actually schedule a trial or you file a dispositive. I'll tell you one thing that's maybe a bright line for your honor is if you file dispositive motions like motions for summary judgment, a number of the cases discuss the question that if you seek affirmative relief. For example, those cases talk about summary judgment motions, et cetera, and then on the eve of a decision you think may be contrary to you, four, five, six, ten, four years, months, four years down the road, you change your mind. That's unfair. I think we all hear. I appreciate your response, but we have to give your adversary a chance. It's something close to equal time. I appreciate your additional time, Your Honor. Thank you. Thank you. We'll get back to you. You saved one-third of your time. Thank you, Your Honor. Good morning, Your Honors. Robert Ebby for Appellee Stephen Zimmer. Mr. Ebby, let me ask you a question. And as you can both see, we've obviously worked on this case, so we don't come to it cold. Leave aside procedural unconscionability, and let's go to substantive unconscionability for the moment. Obviously, Sally, too, makes a difference in your position with the state court. Is there any kind of finding that would be needed? Do we have to remand this case to the district court to make a finding on something so that you can prove your substantive unconscionability claim? Your Honor, if you turn to the district court opinion, the district court, although it first applied Lytle, then went beyond the presumption level. It's on page 18 of the appendix, page 18 also of the opinion. And the district court said, and I'm quoting from page 18, Additionally, this court inquired at oral argument whether any business realities were present that would overcome this presumption of unconscionability. After hearing Cooper Neff's argument, we find that no business realities justify giving Cooper Neff sole access to the court. And so in addition to finding that based on oral argument, the district court also had two days of hearing testimony. It didn't render its decision until after two days of evidence concluding that this was one-sided. It was unconscionable. Certainly your client could have negotiated before joining up with Cooper Neff. He could have negotiated the issue of the computer model. He's a bright guy, smart, probably has worked with contracts before. I mean, why shouldn't he be held to that sort of standard of not, this is not really an unequal bargaining position. In this case, he was lured away from his job at Vanguard. It gave up the opportunity for... It was lured in the sense he was offered some money. Correct, but also in coming over to Cooper Neff, he gave up the opportunity for more than $350,000 in deferred compensation. He accepted an agreement in February 2003 that said, here's your employment agreement. We will negotiate a more definitive agreement. He is a sophisticated guy. The testimony and the evidence is that the hearing was, he understood that meant that this was an offer. He accepted it and... He could have said, thank you, let's do the agreement before I start. He certainly could. And I think at one point he may even retrospectively wish he had done that. But he didn't do that. It still hasn't changed the fact that... What's the prejudice though? Doesn't he have to show... Can we get the answer? Oh, I'm sorry. I'd like to hear the rest of his answer. The problem is, Cooper Neff agreed to negotiate the agreement. He spent 45 days there, was already there, and put his model into play. And then they say, no, we're not going to negotiate. You have to have a formal agreement. Had they negotiated, they would have been subject to a standard, the implicit standard of good faith and fair dealing. He might have been able to negotiate something that he could live with. But they said, no, here it is. This is what you have to take. Take it or you have to leave. Well, as I understand it, on that particular provision, there was only one provision he was arguing about, and that was the ownership of the computer model. He wasn't arguing about the arbitrability clause. And they said take it or leave it on that section. I don't know that there's any evidence that they said take it or leave it on the rest of the employment contract. The evidence says that, yes, indeed, he was mostly concerned with ownership of the intellectual property. That was his major concern. But he also said he found the whole agreement rather aggressive. And he doesn't have to object or try and negotiate the specific arbitration provision to make it, to remove it from being substantively unconscionable. They told him to leave. Okay. Whatever. What's left after Sally 2 if you have one party having a requirement of arbitration and the other party free to go to court for a number of matters? After Sally 2, that alone doesn't make it unconscionable. Is that right? Is that your understanding? But my understanding of Sally 2 is that they take out the presumption. It simply means that if one party didn't salvage, the party didn't say we, the lender, reserved these specific rights. The agreement said these claims are exempt from arbitration. And in Sally, it was the borrower who brought the litigation. Option 1 then, as a defense, raised the arbitration provision. In this case, you have Cooper now, which is asserting the arbitration, filing litigation, suing in state court. Then when it turns around and gets sued in federal court, it says, whoa, whoa, whoa, we've got an arbitration provision. And what would happen if Cooper Neff had first brought the case in federal court rather than state court? Federal court has compulsory counterclaims. They bring the litigation in state court fighting over the model. And Cooper Neff puts the rabbit in the hat when they say it's a 2002 model versus a 2004 model. Those are factual determinations. Mr. Zimmer says it's his model they took. They say, well, we didn't take your model. We took another one. But those are factual determinations. The issue is still the same. They're fighting over intellectual property rights. Are you discussing unconscionability or waiver? Both. Waiver because they initiated the lawsuit themselves. They can't now come back and say, whoa, these claims are subject to arbitration. Unconscionability because it puts Mr. Zimmer in an untenable box. Well, why isn't it very much like Sally and our decision in Harris where there's a split forum model and there is a reason for going to court for a temporary restraining order? A couple of reasons. First, in Harris, there is a provision in Harris, and this goes to waiver, that specifically says bringing claims under this carve-out does not waive arbitration. That is not present in this agreement. The district court found, as a matter of fact, that the agreement could not be construed to say you could sue in court and then as a defense raise arbitration. Let me bring it specifically to this case. Supposing I am Cooper Neff. You have a program that is essential to the operation of my business. You're an employee. You have just left. You've taken my program. Do you think that I'm going to go to arbitration, which is going to take weeks and months, or do you think I should go to court and get you stopped right away? If I'm Cooper Neff counsel, I say go to court. But isn't that exactly what they did? Correct. But they also then can't say we can go to court, we can file these claims against you, but if you raise counterclaims against us, those have to be arbitrated. Okay. You do concede then that there is a business justification for the provision that allows them to go to court immediately. I don't concede that there is a business justification for allowing only one part. I would agree there's a business justification for exempting claims for intellectual property from arbitration. I don't concede that there's a business justification giving it to only one side. And that is why the district court found that it was unconscionable. It was unfair and unreasonably favored Cooper Neff to allow Cooper Neff to have access to the courts on intellectual property, but denied Mr. Zimmer. Your opposing counsel said that there was a reason, and that is in this employment situation, the employer needs the opportunity to get an injunction to preserve the status quo, because presumably he's using the trade secret, the program, whatever, and that the employee would not be in that position. I don't agree with that. That's what he said. He did say that. You're correct. And your response to it is? My response to that is, and I think he buttressed it by the district court's ruling in the preliminary injunction, in essence finding that Cooper Neff has enough money that could protect Mr. Zimmer on damages. But it's problematic on several grounds. First, if Cooper Neff doesn't have money, if Cooper Neff is not a big entity, and you have an employee who wants to protect his intellectual property rights, if he's denied that opportunity to take his model and apply it to a new business, even his own business, he's out of luck if there isn't an opportunity to compensate him. Second, if the intellectual property rights require immediate attention, it shouldn't matter who's asserting the rights. Just because it's the employee doesn't give the rights any difference. He didn't have an opportunity to. Zimmer had an opportunity to assert his rights regarding the property rights in federal court. Because he brought the suit. Typically, he wouldn't stay on the job and sue his employer for the property. The typical scenario is he leaves, and then he sues in federal court. Isn't that what happened here? Correct. Cooper Neff is trying to say he can't do that. He can't sue in federal court. He's got to arbitrate it. Again, if Cooper Neff brought it in federal court, Mr. Zimmer files a counterclaim. It would be a compulsory counterclaim in federal court. Cooper Neff asserts the defense of arbitration, moves to compel arbitration and counterclaims. You could have a point where Cooper Neff could pursue his claims, could be the plaintiff in a federal court, get a result, deny Mr. Zimmer the opportunity to respond to that, and in effect have race judicata by the time Mr. Zimmer tries to pursue arbitration on those claims. What is Mr. Zimmer doing now? He is in the industry, Your Honor. I don't have it at my fingertips the name of the company he's working for. He's going to another company. Correct. And is there anything that is precluding him from using his model? Not from using his model. I don't pretend to understand all the intricacies of what Cooper Neff might assert with respect to what he claims is his model. But he was denied the opportunity to work at the employer that he had chosen to. He was denied the opportunity to use that model with that employer. He lost that opportunity. He was out of work at the time these proceedings were commenced. I'm just trying to find out what they're fighting about now. Currently, is it just money? Is it just the claim for damages now? Is that what we're left with? Your Honor, some people say it's always about money, and some people say it's never about money. But we look at it differently. He is currently working, you're telling us. Correct. And does he have a claim for damages also? Yes. Okay, so each side now has a claim for damages against the other, right? Is that all that's left? Well, they're still fighting over ownership of the model. In the federal action, Cooper Neff, before asserting arbitration, actually filed two counterclaims. One was for declaratory relief seeking declaration that it was the owner of the model, and second was to invalidate the copyright registration that Mr. Zimmer had obtained on the model. So those issues are still out there. Let me ask you a question about waiver. We have a lot of legal information that you really have to make a showing of prejudice if your waiver case is based on a late defense of arbitration. Okay. I don't know much about how prejudice plays into it when your claim is that they elected affirmatively to start a different case. So where are we in prejudice with regard to that scenario as opposed to the late defense of arbitration? I don't believe the district court assessed prejudice. And if there is a necessity for prejudice... I guess that's my question. Is there a necessity for showing of prejudice when the waiver claim is based on initiation of a lawsuit in a different form? Not in this case. And the reason that we don't need prejudice, in fact, the district court signaled that in its waiver discussion, referring to it as non-traditional. That's kind of odd. I thought you would say we spent a lot of money, had lawyers, had to defend the case in a different forum. We went through discovery, and it all turns out for nothing. But is that part of the record, or is that something that we really can't consider? It is part of the record, but the district court didn't make a finding of prejudice. Yes, I think there is prejudice. I would think that defense of a suit in a different forum, one of two forums, is per se prejudice if you have to pay for a lawyer. Sure. And again, as Cooper Neff's counsel conceded, there were discovery taken. And speaking of that, just how much work was done in the state court? He says three depositions. You got two and he got one. Is that the extent of the conduct in the state court? Is that how far it went? Your Honor, I apologize.  I only know from the record that you did. And therefore, going back to Judge Rustani's question, if there is no record at this stage with respect to prejudice on this kind of waiver issue, is there any reason why we shouldn't remand it to the district court  I believe that the court can find the record of the fact that there was litigation, the fact that he prepared for a TRO, the fact that Cooper Neff filed its own counterclaims before arbitration was ever raised, the fact that Cooper Neff initiated the state court action. But with respect to the district court opinion, the district court did not consider prejudice. I didn't hear you say there is no requirement of prejudice. I didn't hear you say that. And if I may, Your Honor, the district court in its analysis, I think, simply interpreted the contract. And it said, unlike Harris, where there's a specific clause saying if you initiate state court action or if you initiate judicial proceedings, it doesn't waive your right to come back and compel arbitration. District court said, under this agreement, as I interpreted, you can't have it both ways. If you commence a lawsuit on these issues, and then your employee either files counterclaims or asserts his own affirmative claims on the same issues, you can't now come back and say, well, he's subject to arbitration. So you're saying it's an election of remedies. He elected. That's it. It's not really waiver-slash-prejudice analysis. So you're saying there is no need to have a prejudice analysis. Correct. Under the district court's analysis, he simply interpreted the contract. Okay, you're here now. Are you saying he's right? Yes. Okay. But if we don't accept your... You're basically saying that this record shows prejudice per se, and what we're trying to find out from you is if we don't agree with you that this is necessarily the kind of prejudice that would show a waiver, is there any good reason why we shouldn't send remanded? And that would be your... Wouldn't that be your backup position? Wouldn't you, as a lawyer, say to us, yeah, we're your honors, but if you feel that way, then by all means, send it back to the district court. It was very favorable and inclined to my client. So send it back to the district court so we can get the finding on the record. Yes, Your Honor. Okay, that makes sense. But the district court might say this has much to do about nothing. I mean, it sounds like you don't have anything to fight over. Nobody... I mean, the computer program is apparently not used by Berneth. Dr. Zimmer is apparently not using the computer program. He's got a job. Cooper and F did use it for a period of time, so there certainly are damages. They're seeking damages for the time that it used earlier? Correct. Second, Mr. Zimmer has obtained a copyright registration on the model, and Cooper and F has challenged that. All right. I'm just talking about prejudice for a second. If they had continued the state law, state court case, you'd have a real good case of prejudice because then you might have conflicting decisions from state court and arbitration, right? That's your view. It's the same. The counterclaim mirrors their state court action. That's your view, correct? Correct. And the issues in addition to the counterclaim, the issues that Mr. Zimmer has brought and the issues that were in the state court are virtually the same. They're fighting over ownership of the model. Is the state court case open? Yes. It's still pending. Isn't it state pending our decision? It is state, but it's still open. But it's state for what? Pending what? Your Honor, I'd say. No, don't raise your hand. You're going to get another chance. It's not clear. You can say you don't know if you don't know what the basis for the state is. Was it the Federal Court that stated? That I don't know either. And, in fact, I don't know that it's actually stated, just that the parties have walked away from it temporarily while they're pursuing the federal action. Oh. Cooper and F hasn't withdrawn it because it prefers arbitration? That is correct, Your Honor. Now, if we were to go the split issue claim way, what issues would you say could go to arbitration? I know this is not your position, but you have to think ahead. It's like chess. And what issues have to remain in the federal court, in the courts? Because there is this law out there that says you can have split proceedings. So what, in your view, is appropriate for, in this case, not my hypothetical case, what's appropriate for arbitration and what's appropriate for judicial determination? Well, we believe the arbitration clause is unconscionable. So if it's unconscionable and we're correct, nothing goes into arbitration. All right, but I gave you an if question. You have to go beyond that. I'm just trying to understand, Your Honor, what would be the basis of keeping it? Well, one basis would be that we don't find that it's substantively unconscionable, and therefore, since you have to have both procedural unconscionability and substantive unconscionability, that we would say we can't affirm the district court on its unconscionability determination. I mean, think of that now. So then we go to, well, where are we? I mean, I have to spell this out. And where we are may be to follow the split forum cases, and I'm asking, which I think Sally discussed, and I'm asking you how do we split it from your standpoint? What is the best thing? And I know you're not there, but you have to take that step. And again, I apologize, Your Honor. If you found that substantive unconscionability wasn't there, then I assume you're going to split it based on waivers. So the question is what have they waived? And as you pointed out, in the state court, they brought much more than simply claims over entitlement to the intellectual property rights, and therefore, they have waived any ability. They can't use it as a shield, or in this case, a sword and a shield. But the question was can you have a split forum, and what are the circumstances of it? Yes, you can have a split forum. I don't believe there's anything here that you could split because they have waived everything. Well, hypothetically. Well, no. All right, you can ask hypothetically, but I want to know specifically. For example, in this case, what about the issue of the copyright registration? Where would that go? That is tied up in the heart of the intellectual property. Who owns this intellectual property? And I don't know how you would split that out and say go arbitrate that. But I don't see it. If Zimmer left with this computer, a very valuable piece of property, why could not Cooper Neff go to court and seek to enjoin his use of it? Under the agreement? Yes. They could, and they did. But you say the agreement is invalid because it didn't give your client the same right. No, I'm saying the arbitration provision is invalid. They can't go to court and then tell us that we have to arbitrate. Let me ask you a specific question. It picks up on something Judge Rustani was talking about. Which forum would best decide whether the 92 model is the same as the 94 model? Which forum would be best, arbitration or the courts? The courts. Why? Because it's already in the courts. If you're fighting over who's got ownership, as Judge Fontes has said, it makes perfect sense that you would move in quickly and seek temporary relief. If you split that. I'm sorry, but I want you to get on to the question. Now, today, if we have to decide that issue, not whether the 92 is the same as the 94, but if we have to decide which forum should decide that, can you have experts in arbitration? Yes, if the arbitrator agrees to it. I don't see anything in their arbitration provision that would exclude that. But you'd have a situation where a federal court would have already issued rulings on a TRO and a preliminary injunction, and then you'd have an arbitrator starting afresh, perhaps ruling inconsistent with what the federal court has already ruled. Do you have any more questions? Do you have any more questions? Thank you very much. Mr. Colbert, we gave you a lot more time, and that was because, with all due respect to you, your answers go off into your argument position without answering the questions. So I would ask you, on your five minutes, I'm going to keep it at five minutes, because there's another case that members of this panel have to go to, that you keep to the questions presented. Go ahead. I'll use less than five minutes if I can. I'd first like to just clear up one thing. I keep hearing discussions of, quote, the model and the model being involved, and I need to bring the court back to the fact that that's simply a nonsensical position. There is no copyright on a model. The issues are what the code is, and that was a big issue below, and then Judge Kelly finally got it, so we don't want to look at that. But isn't code part of the model? No. They're using the model, meaning a concept of trading. Code is, for example, the copyright registration that was brought in federal claim, in fact, I've got it in front of me, the copyright violation was a 319-page, thousands of lines of code, which was analyzed by the experts, saying that 96% of this doesn't appear anywhere in the 2004 model. So that's all you can look at. So we have to be careful about that. Can you repeat what you just said? What expert said what? There was an expert at the preliminary injunction hearing in federal court below when Judge Kelly said, let's exchange the two codes, and let's see if, in fact, Dr. Zimmer's testimony that they're the same is accurate or not. And, in fact, the expert got up and said, I've looked at every single line of this code, and 4.3% of the code is the same. And I can't even say that 4.3% is copied and it's in the record we've sent to you, because a good deal of that could be just standard code that people use all the time to repeat the same lines all the time. That's all that I can find that's the same. So based on that, the judge finally understood that we're talking about code, and they are different. That's why you can have separate analyses by two different bodies as to who owns which. And the 2002 code that Dr. Zimmer brought his claim on, not an issue in the 2004 case. And Cooper and Eftin are not asserted rights in it. Well, I think you have a different view on that. I mean, I think he would say that it's the model that leads you to choose the code, and they'd be arguing about that endlessly. I don't know that we can decide that today. And that's why the copyright law says you cannot have a copyrighted model. You cannot have a concept or a mathematical algorithm. It has to be specifically set down. Is the code the program? I mean, I wrote the decision in Apple versus somebody that decided that the operating code is copyrightable. The program is code. Yeah, and so I want to understand what we're talking about. When you say code, you mean the program. Yes, Your Honor. Okay. All right. Now, I also want to address a comment by counsel that Judge Kelly went beyond relying on LIDL, and it's simply not the case. Judge Kelly said specifically, based on LIDL, I find or I hold. And then he said, and I don't see any business justification to overcome that presumption. Now, if you look at Sally, the worst you could say is that Sally might require you to have a facially valid reason. There's no burden, certainly, and I think, as Your Honor has recognized, there's lots and lots of cases that talk about IP and the importance of it and why you carve them out, which is why it's the most commonly carved out provision. Did you hear that? I'm sorry. It's okay. I know. I'm committing the same sin that my colleague committed. I don't even know where I am now. It's okay. Let me ask you a question now, and then maybe you can come back. I've figured out where I am by then. I gather your answer to my question will be different than that your colleague gave. Is it your view that in order to find substantive unconscionability, we would have to remand so that the district court could make a finding that doesn't appear in the record to follow Sally to? The answer is I don't believe the court needs to because it was the burden of Dr. Zimmer to show it. He didn't do it. It's not in the record. However, if the court felt that it wanted to do so, it could remand for further proceedings. I just don't think it's necessary. But Dr. Zimmer, or the district court at that time, was relying on LIDL, which was then the outstanding Pennsylvania law. Sally, too, has changed at least that portion of the law. And so my question remains under the law as it is. If we can't sustain the district court on that issue because it relied on a presumption, then why shouldn't we send it back to see if the district court can make a finding notwithstanding the presumption that would meet the requirements of substantive unconscionability? Your Honor, I think that would not be an untoward event if it was sent back down for the judge to look at the record and make determinations it did not previously make. But there's nothing in the record to support that. This court can look at the record and say there's nothing to support such a finding. The court would have to have additional hearings, more testimony by Dr. Zimmer and his counsel. And when we remand, it's not unusual to say you can have further hearings if you use them to make findings of that. Exactly. But that would be the circumstance, I believe, Your Honor, where the issue was before the court. And in fact, the question of prejudice on waiver and the question of unconscionability and what constitutes substantive unconscionability was before the court. It was argued. The position we took was that Lytle doesn't apply. So the issue should have been presented by Dr. Zimmer and did. So the answer is yes, it can be. But I think in this circumstance, it's really not necessarily terribly fair to do that. He says that, I think he said after I finally got him around to that point, that this isn't a case where you have to make a showing of prejudice because the contract required you to elect remedies and you elected. So I want to know if you have a hot case that will tell me that even in a situation where you choose to first go to another form that prejudice is required for the waiver case. Your Honor, there's no hot case directly on that point. But we'll adjourn the court for two very recent decisions. The Alighter case, which the court has. Yes. And the other one is the Stanley-Layman group from last Friday. And the Alighter case basically says the filing of an action, that's not enough. And it goes on and it still looks at the question of prejudice. They all require prejudice. And the Stanley-Layman group, that's a case that would come as close as possible to the position being taken by counsel here. And in that case, it was that there was no ability, no carve-outs. There was no right on the part of the party bringing an action at all to seek any litigated relief. It all had to be arbitrated. And yet he elected to go to litigation. There was no carve-out. And so the best you can say is if you had a contract which had no carve-outs and no permission by one party to go to court, and the court elected to litigate a matter for which it had no right to litigate, you say maybe in that circumstance you have a waiver. I believe the Layman group still looked at the question of prejudice. But the question is that's as close as you can come and that's not the case here. And I think I would ask the court to look at that case in light later. Is there prejudice in having to appear and defend and pay for an action? Based on that simple issue, I don't believe there is. It's very common. All the cases that are written involve the requirement to appear in cases, defend yourself, some of them for years at great expense and still not got a waiver. So I think the issue based on prejudice. So the question of the mere filing of one and appearing clearly is not supported by law as a basis for prejudice. It has to go beyond that to some point where the party has an unfair advantage or the other party has an unfair disadvantage. And we're not there. I think the court has observed that right now everything is sort of a status quo. There are no periods in your discussion. I'm sorry. Where are you coming from? I have a question. I was young as 11. Do you then agree that it's not like the position you took in writing that after a lighter the question of waiver is for the court and not for the arbitrator? I absolutely agree. Absolutely. Thank you. Thank you, gentlemen. We'll take another advance. This court stands adjourned until 11.30 a.m.